This morning is Kennedy v. The Air Force. Ms. Solomon. May it please the Court, Counsel, Arielle Solomon on behalf of the Petitioner, good morning. Your Honors, the Petitioner appears before you today to request that this Honorable Court reverse the MSPB, the Merit System Protection Boards, January 13, 2009 decision, which denied his application for attorney's fees. The Petitioner's argument is also delineated in the principal brief, but for purposes of oral argument, I would respectfully draw the Court's attention to point two, which appears in the principal brief at page nine, wherein the Petitioner argues that the MSPB arbitrarily deemed his success to be nominal and rejected the motion for attorney fees based on this Court's prior decision in Jacobson v. The Department of Justice at 500 F. 3D, 1376. What was the amount of the total remedy? What amount of recovery did Mr. Kennedy get? Mr. Kennedy received compensation for two days of lost annual leave and also a correction of his records, which he was requesting, which totaled six days. But that's what, a couple hundred dollars? Actually, the agency credited him more than a couple hundred dollars. In reality, it would have been a couple hundred dollars. The issue that's before this Court is that the standard that was applied by the MSPB in evaluating the petition for attorney's fees was ostensibly the degree of total success enjoyed by the appellant in this case. Well, you can kind of see where I'm going with that question, but it seems like that's a rather minimal amount of recovery. And yes, a couple days are corrected on his record, but isn't there some justification for the Board to conclude that that is a nominal rather than a catastrophic recovery? Well, in terms of a nominal recovery, the nominal recovery should be measured in terms of the total amount of relief that was requested. And the total amount of relief that was requested during the context of the hearing was ostensibly two days. Well, let me ask you a question in that respect. Because the request for relief requested at the outset was non-specified leave that was required to be taken during a 21-year period from 1980 to 2001, correct? Yes, Your Honor, that's correct. And then at the pre-hearing submission, February 29, 2008, it looks like that claim was pared back to some 32 days, correct? In the pre-hearing submission, there was an exhibit that specified 32 individual days. The pre-hearing submission was later amended. The pre-hearing submission was amended by virtue of some records that became available prior to the hearing date. The amended pre-hearing submission was relied on very heavily by the administrative judge in the initial decision, as reflected in the petitioner's appendix. The amended submission requested relief for how many days? It requested relief for the, it introduced into the record evidence supporting the two days. And the two days were actually requested during the context of the hearing. So the question then is in measuring sort of your success, your client's success in this matter, is that success to be measured against the claim that was originally requested, the claim that was requested in the initial pre-hearing submission, or the claim that was requested just prior to the final hearing, because obviously it got pared back all along the way. And you're arguing that, well, ultimately when it went to the hearing, we were just asking for the two days and the six days, and we were 100% successful. That's exactly the petitioner's argument. And the reason for that is that when these claims, I deem them Butter Bar claims, meaning that the claim was brought pursuant to Butter Bar v. Department of Justice, which was also one of his course decisions, that the duration of time that is initially cited in the complaint is an expansive one. And that is largely because military records and civilian pay records are largely unavailable to the appellant at this stage. And it isn't until he has the opportunity, he or she has the opportunity to engage in discovery that they have the ability to collect these records and then add some measure of specificity with regard to what exactly they're requesting. But why shouldn't all of that be taken into account in discerning, you know, when the AHA exercises the discretion afforded in the statute to make a determination as to attorney's fees, why is it not appropriate for the AHA to consider all of the requests made throughout the course of the proceedings? Just as any complaint that's filed in a litigation matter, complaints are filed with the intention of preserving a client's ability to recover the total amount that they are entitled to. And as discovery commences and as additional records are provided, some claims may drop out or some claims may later be abandoned. In this case, a certain amount of the claims that were specified in the initial complaint, which was actually filed in 2005, did drop out. But you don't think that claims that drop out are legitimately part of the assessment of success? If that were the standard, then all claimants bringing a Butter Bar claim would essentially be precluded from obtaining attorney's fees. And the reason for that, especially when this claim was initially filed in 2005, is that records from the Department of Finance and Accounting Service, DFAS, would not provide records absent a subpoena from the Merit Systems Protection Board. So unless a client maintained an exacting arsenal of their records for a 20-year period of time, they simply didn't have access to that. Moreover, the agency has time and attendance. Ms. Solomon, what advice would you give us as far as setting a standard for what is nominal or not nominal? In terms of setting a standard, it's the petitioner's argument that the distinction between what is and what is not nominal should be based on the total amount of relief that was requested of the administrative judge prior to the hearing. Well, okay, let's base it on whatever. Is there a percentage cutoff that you think there ought to be to... Respectfully, I think the percentage cutoff is subject to the discretion of the administrative judge as is provided. That's kind of my point. This is a pretty discretionary thing that really isn't a solid legal standard, is it? It is discretionary. However, if we're looking at it wherein in this particular case Mr. Kennedy specifically requested two days, specifically requested that six days be corrected on his records... Is 8 out of 32, what's that, 25%? Is that nominal? Depending on whether or not the court were to hold Mr. Kennedy to the 32 days, which we're not relied on during the context of the hearing or after the amended pre-hearing submission, it could potentially be deemed nominal. However, in this case, there was no claim for 32 days, and that's reflected by the fact that if you look at the respondent's brief at page 10, the Exhibit B of the pre-hearing submission, the dates cited in there were neither raised nor relied upon by the administrative judge during the context of the hearing, and ultimately when he awarded relief in the initial decision. You're into your rebuttal. Would you like to save it? Yes, I would. Okay. Thank you, Ms. Solomon. Mr. D'Alessandris? Good morning, Your Honor. May it please the Court. This Court's holding in Jacobson is controlling and requires that the Merit Systems Protection Board's decision be affirmed. Mr. Kennedy asserts three reasons for why he's entitled to attorney fees. He alleges that he completed the necessary forms and obtained relief from the MSPB, and therefore he's entitled to attorney fees. In Jacobson, the success rate was somewhere around 15%, right? It was 1 in 7, Your Honor. That's 15%. It's higher here, even counting in a way that Ms. Solomon suggests we should not count. Actually, Your Honor, it's lower. In Jacobson, the claim was for seven years, and the panel, well, the administrative judge. Tell me why you think it's lower. Eight out of 32 seems like higher to me. The administrative judge here noted that these were, they obtained entitlement to pay for two days in 1996 and the correction of records for six days in 1997. That was two years out of the 21-year period, or less than 1 in 10 compared to 1 in 7 years in Jacobson. Well, but you're looking at years.  I assume we're looking at the days, 32. They went on eight. That's 25%. Well, Your Honor, first of all, the administrative judge found that the correction of the military pay, or I'm sorry, the military leave days. Military leave. Yes, Your Honor. Thank you. The military leave didn't constitute effective relief and was looking just at the paid days, and in that case he found that there were two days out of the 32, or 1 in 16, which was, again, less than the relief awarded in Jacobson. That's a little bit of my concern here. It seems that an administrative law judge, as this one did, can look at years, as you argued to me, two out of 21 years and say, oh, that's nominal. Or we can look at days and it becomes bigger. Is this area so fluid that we allowed administrative law judges to pick the facts that they want and characterize them as they wish to reach a conclusion of nominal? Well, Your Honor, there's discretion afforded to the administrative law judges, and in Jacobson this court noted that there was discretion to be afforded to the Merit Systems Protection Board in their determinations as to whether or not the petitioner was entitled to relief. But the question, though, I think, is what's the framework within which that discretion is measured? And I'd like to ask you the same questions that I asked Ms. Solomon. Do we look at the request initially made, the total number of years, or do we look at the pre-submission information, or do we look at the request that was made really at the hearing? What's the proper measure to assess success? Well, Your Honor, in Jacobson the court held that the resolution of the degree of success issue centered on an examination of the claims presented to the board, and in this case they presented a claim to the board, and we've attached those documents in the appendix to the red brief showing that they claimed 21 years of improperly charged leave, and then they tallied the total at a later date. That was the initial request, and then as the proceedings proceeded they pared it back and ultimately presented the arguments for a much, much lesser time. And I believe, Your Honor, from the record that those revised claims were presented the day before the hearing. In this case, the Air Force was required to defend against the claim for 21 years until the very eve of the hearing. If they had come in at the very beginning and said, we're entitled to two days, the Air Force may have taken different litigation strategies and the petitioner may not have accrued $12,000 in legal fees. Well, is it fair to really look at the initial claim? Because, as Ms. Sullivan points out, that unless a party has meticulous records, it's almost impossible to tell exactly what leave might have been used, so naturally a party comes in with a broad claim, gets the necessary discovery to see what the records actually show, and then proceeds accordingly. So maybe the proper measure is something a little bit later than the initial claim. Perhaps it may be, Your Honor. However, it's still within the discretion of the administrative law judge. The statute specifically provides for discretion in the statute, saying that attorney fees may be awarded at the discretion of the board. I'd also like to point out, Your Honor, that that argument that Ms. Sullivan presented was not presented in her brief. It's been presented, as far as I can tell, for the first time here today. I haven't had an opportunity to go back and review the veracity of the statements as to whether or not the DFAS was taking such a position. But even assuming they were, it's still the responsibility of the petitioner to present a valid claim. I'd also like to turn back to the- as opposed to any particular time or any particular stage or anything else. I believe, Your Honor, it's the claim that's initially presented, but the administrative law judge in this case also said that even if the later date is the valid point, the pre-hearing submission of 32 days, that he still found it was not-it was still a nominal success. And I'd also like to turn back to Judge Rader's question about the number of days and saying that 8 days out of the 32 would be 25 percent. If you review the military leave summary, which is in the appendix to the red brief at pages 9 through 11, as I read this document, the 8 days of relief that were awarded for the improperly charged leave in 1999, those dates are not here in the summary. So those days-that's relief that he received, but that wasn't part of the universe of the 32 days. So, again, we're still back to 2 of 32 days or 1 16th of the claim being meritorious. I'd also like to respond, Your Honor, very quickly to the public policy argument presented by the-by Mr. Kennedy. Basically, their public policy argument seeks to re-argue Jacobson. This court is bound by the earlier panel decision in Jacobson. Their interpretation would deprive the Board of Discretion in providing for the award of attorney fees and would turn USERA into a mandatory fee-shifting statute. In Jacobson, this court noted the difference in the language between the USERA fee-attorney fee provision and the provisions in other fee-shifting statutes, such as the Fair Labor Standards Act. And unless the panel has any other questions, we ask that the opinion of the Merit Systems Protection Board be affirmed. Thank you. Thank you. Ms. Solomon, you have 6 1⁄2 minutes. Thank you. Just to briefly address some of the points on rebuttal, the government turned their attention to the red brief at pages 9 through 11, wherein they specifically referenced Exhibit B. The Exhibit B, as correctly noted, did not contain any of the days that were initially requested or awarded during the context of the hearing. Moreover, Exhibit B was marked for the record. It wasn't introduced into evidence. The only evidence relied on by the administrative judge was the appellant's amended Exhibit A1, wherein the relief requested was explicitly delineated, as noted in the administrative judge's decision at A14 through 15 of the petitioner's blue brief. And the administrative judge indicated that he was relying explicitly on the appellant's amended exhibit, where the evidence reflected that Mr. Kennedy was entitled to two days and a correction of six days of the records. Lastly, just to briefly address the concern with respect to the government's argument about the public policy argument, wherein it was stated that the petitioner argues for a standard that would arbitrarily or ostensibly deny the MSPB the opportunity to make discretionary decisions, which, as provided for by USARA, the decision to award attorney's fees is absolutely discretionary. However, in this case, it's very clear that the administrative judge picked and chose each individual fact that he decided to rely on when denying the petition for attorney's fees. It's evidenced by the fact that the appellant's Exhibit B was cited in the decision which denied the petition for attorney's fees, and the Exhibit B was neither relied on nor entered into evidence before the Merit Systems Protection Board. The administrative judge really was overreaching in this respect, and in conclusion, the decision to rely on that and take it into consideration when evaluating the overall degree of success was arbitrary, capricious, and constituted an abuse of discretion. In conclusion, if there's no further questions from the panel, the petitioner would respectfully request that the decision be reversed and remanded so the Board may determine what a reasonable amount of attorney's fees would be. Thank you. Thank you, Ms. Solomon. The next case is Patent Rights v. Video.